UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WALTER CURABA,<br><br>Defendant. | CR. 14-50065-JLV<br><br><br>ORDER |

**INTRODUCTION**

Defendant Walter Curaba, appearing *pro se*, filed a motion for compassionate release. (Docket 170). Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Curaba's motion. (Dockets 175 & 177). For the reasons stated below, defendant's motion is denied.

**STANDING ORDER 20-06**

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a

---

[1] See https://www.sdd.uscourts.gov/so2006 ("SO 20-06"). SO 20-06 was amended on October 21, 2020, after this case was ripe for resolution. See https://www.sdd.uscourts.gov/socraa. The amendments have no impact on the court's analysis of this case.

procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system."  (SO 20-06 at p. 1). Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act."  Id. ¶ 1.

By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]"  Id. ¶ 4.  Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

    c.    Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

    d.    Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.  The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."  Id.

## MR. CURABA'S CLASSIFICATION

On May 7, 2020, the FPD and the U.S. Attorney filed a notice designating Mr. Curaba as a Low Priority case. (Docket 172).

## FACTUAL BACKGROUND

Mr. Curaba pleaded guilty to attempted receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1). (Dockets 153 & 154). On July 2, 2019, Mr. Curaba was sentenced to a term of imprisonment of 60 months followed by five years of supervised release. (Docket 164 & 165 at pp. 2-3). Based on a presentence investigation report, Mr. Curaba's advisory guideline range was 30 to 37 months of imprisonment with a total offense level of 19 and his criminal history category I; however, the offense carried a minimum mandatory sentence of five years. (Docket 161 ¶ 50). The court sentenced Mr. Curaba to the mandated minimum sentence of 60 months followed by five years of supervised release. (Docket 165 at pp. 2-3).

Mr. Curaba is currently an inmate at FCI La Tuna, a low security facility, in Anthony, Texas. (Docket 170 at p. 1); Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last checked Feb. 16, 2021). The total inmate population at FCI La Tuna is currently 824 persons. https://www.bop.gov.locations/institutions/lat/ (last checked Feb. 12, 2021). As of February 12, 2021, there were 12 active COVID-19 cases among inmates and six among staff, two inmate deaths as a result of COVID-19, and 486 inmates and 65 staff had recovered from COVID-19 at FCI La Tuna. Id. https:www.bop.gov/

coronavirus/ (last checked Feb. 12, 2021).  Based on these statistics and assuming a static population, over 60 percent of the inmates at FCI La Tuna have contracted COVID-19 and two have died as a result.

Mr. Curaba has a scheduled release date of March 12, 2023.  See https://www.bop.gov/inmateloc/.  Mr. Curaba served approximately 22 months in custody to date.  (Docket 175 at p. 252).  The court estimates Mr. Curaba will be eligible for home detention on September 12, 2022.  Mr. Curaba is 51 years old.  See https://www.bop.gov/inmateloc/.

## MR. CURABA'S MOTION

Mr. Curaba's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his many health conditions and his confinement during the COVID-19 pandemic.  (Docket 170 at pp. 1-3).  Mr. Curaba claims his medical conditions include hypoglycemia, eczema, hiatal hernia, degenerative arthritis, osteoarthritis, low back and neck strain, migraine, headaches, gastro-esophageal reflux disease, sleep apnea, insomnia, and anxiety.  Id. at 1.  He claims to suffer with pain every day and fears for his life if he contracts COVID-19.  Id.  Mr. Curaba is critical of the current medical care he receives at FCI La Tuna and voices many complaints.  Id. at 1-2.  He requests his sentence be reduced to time served or that he be placed on home confinement.  Id.  On June 20, 2020, the FPD docketed a notice of intent not to supplement Mr. Curaba's *pro se* motion.

4

Mr. Curaba's medical records confirm the following medical conditions:

- Migraine.  (Docket 175 at p. 67);

- Sleep apnea (mild).  Id.;

- Vertigo.  Id.;

- Gastro-esophageal reflux disease without esophagitis ("GERD").  Id.;

- Polyarthritis.  Id.; and

- Low back pain.  Id.

Mr. Curaba's conditions are managed with acetaminophen, caffeine tablets, meloxicam for arthritis, omeprazole for GERD, and vitamin D.  Id. at pp. 79-82.  Mr. Curaba is 66 inches tall and his most recent recorded weight is 197 pounds.  Id. at pp. 58.  Based on his height and weight, Mr. Curaba has a body mass index (BMI) of 31.8, which is in the obese category.  See Adult BMI Calculator, Center for Disease Control & Prevention ("CDC)", https://www.cdc. gov/healthyweight/assessing/bmi/adult_bmi/English_bmi calculator/bmi_calculator.html (last checked Feb. 12, 2021).

## UNITED STATES' OPPOSITION

The government opposes Mr. Curaba's motion for compassionate release. (Docket 177).  First, the government argues Mr. Curaba has not exhausted his administrative remedies because there is no evidence he made a request to the warden for compassionate release.  Id. at p. 3.  Second, the government generally asserts "[t]he existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself

5

. . . provide a basis for a sentence reduction." Id. at p. 10. Next, the government argues denial is warranted because Mr. Curaba's medical conditions do not rise to the level of serious physical and medical conditions contemplated to warrant compassionate release. Id. Neither, argues the government, are such conditions on the list of conditions increasing or potentially increasing the risk from COVID-19 as identified by the CDC. Id. According to the government, Mr. Curaba's conditions do not interfere with his ability to provide self-care in the BOP facility and his conditions are manageable while in custody. Id.

Finally, the government argues the 18 U.S.C. § 3553(a) factors weigh against granting compassionate release to Mr. Curaba. Id. at p. 17. The government contends the nature and facts of Mr. Curaba's intended offense were serious and involved attempting to pay a 12-year-old-girl to have sex with him and take sexual pictures of her. Id. (see also Docket 161 ¶ 8). The government reminds the court Mr. Curaba was not compliant with the conditions of pretrial release regarding his access to computers. (Docket 177 at p. 17; see also Docket 161 ¶ 5). Additionally, the government asserts the plea agreement reached between the parties resulted in a significant reduction in the severity of the charge to which Mr. Curaba pleaded guilty and the nature of his conduct does not warrant an additional reduction. (Docket 177 at pp. 17-18).

## ANALYSIS

### **<u>Administrative Exhaustion</u>**

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The evidence is less than clear whether Mr. Curaba exhausted his administrative remedies.  Neither Mr. Curaba nor the government submitted a copy of a written request to the warden at FCI La Tuna or a copy of the warden's response.  The government contends this is because no such request was made.  (Docket 177, at p. 3).  The BOP's administration records of Mr. Curaba's custody show various requests have been made by him and appealed. (Docket 175 at pp. 253-62).  The codes used in these records, however, are indecipherable.  The court concludes it is likely Mr. Curaba did not, in fact, follow the administrative process to request compassionate release from the

warden prior to bringing the present motion.  Nevertheless, the court has examined the merits of Mr. Curaba's motion and concludes Mr. Curaba has not demonstrated "extraordinary and compelling" reasons for release.

### Extraordinary and Compelling Reasons

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020).  That task was left to the United States Sentencing Commission.  See 28 U.S.C. § 994(t).  Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  See id.  Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling.  U.S.S.G. § 1B1.13 comment. n.1.  The four categories have not been updated since December 2018 when the First Step Act became law.[2]

The court previously surveyed the status of the law as to a court's authority under the First Step Act.  E.g., United States v. Thunder Hawk, CR. 14-50008, 2021 WL 253456, at *5 (D.S.D. Jan. 26, 2021); United States v. Magnuson, CR. 15-50095, 2020 WL 7318109, at *4-5 (D.S.D. Dec. 11, 2020);

---

[2]The United States Sentencing Commission lacks a quorum and currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]."  United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

United States v. King, CR. 15-50050, 2020 WL 6146446, at *4-5 (D.S.D. Oct. 20, 2020). A summary of that survey is sufficient here.

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)." United States v. Brooker, 976 F.3d 228, 237, 234 (2d. Cir. 2020). Like the United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits,[3] this court has held it retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." E.g., Magnuson, 2020 WL 7318109, at *5 (quoting Brooker, 976 F.3d at 237); see also McCoy, 981 F.3d 271 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."); United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate

---

[3]The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue but declined to do so. United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

9

release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); and United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion").

The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Mr. Curaba relies on his medical conditions and incarceration during the COVID-19 pandemic as extraordinary and compelling reasons warranting compassionate release. (Docket 170 at p. 1-3). Despite the expanded authority under the First Step Act, the court finds Mr. Curaba has not met his burden of proof by presenting "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).

Mr. Curaba is 51 years old. The CDC recognizes that the risk of severe illness as a result of COVID-19 increases with age, with older adults at higher risk. See Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last checked Feb. 12, 2021). The CDC identifies people over 50 as being four times more likely to have a severe illness

than those younger than 30, though the greatest risk is to those 85 and older. Id.

Adults of any age, however, are at increased risk of severe illness from COVID-19 if they have certain conditions, including cancer, chronic kidney disease, COPD, heart conditions, obesity, pregnancy, sickle cell disease, type 2 diabetes, and several others. See People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 3, 2021). Mr. Curaba suffers from many common conditions which are not identified on the CDC's list for those causing serious illness from COVID-19.[4] He does, however, fall into the obese category with a BMI over 30, one of the conditions the CDC finds increases the risk of COVID-19 serious illness.

While the court recognizes that because of obesity Mr. Curaba is at a higher risk if he were to contract the virus, it cannot conclude this condition alone is an extraordinary and compelling reason to warrant compassionate release. Mr. Curaba himself did not raise this as an issue, though that is not dispositive to the court's analysis. Based on the court's review of his medical records, Mr. Curaba appears to be receiving appropriate medical care at La Tuna regardless of his many complaints. The court finds Mr. Curaba has not

---

[4]The CDC also identifies certain conditions that *might* increase the risk from COVID-19, including moderate to severe asthma, cystic fibrosis, hypertension, HIV, neurologic conditions, liver disease, pulmonary fibrosis, type 1 diabetes, and several others. Id. Mr. Curaba has none of these conditions.

met his burden of proof to present "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i).

Several courts, including courts in the District of South Dakota, have concluded that obesity on its own during the COVID-19 pandemic does not necessarily warrant a reduction in sentence for extraordinary and compelling reasons. See United States v. Williams, CRIMINAL ACTION No. 15-571-3, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020); United States v. McAbee, No. 4:14-CR-40027-01, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); United States v. Saenz, CR. 10-30027-01, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons).

The court also recognizes the BOP's recent implementation of a COVID-19 vaccination program. Id. BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last checked Feb. 12, 2021). As of February 12, 2021, 45,577 doses have been administered in the BOP system-wide. Id. Those numbers are increasing significantly with each day.[5] According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher

---

[5]As of February 11, 2021, 43,650 doses had been administered. https://www.bop.gov/coronavirus/.

> potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

Id.

Based on the court's detailed review of the medical records, Mr. Curaba does not have medical health conditions to support "extraordinary and compelling" reasons for compassionate release during the COVID-19 pandemic.

### 3553(a) Factors

Additionally, the court concludes the § 3553(a) factors do not support relief. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from further crimes of the defendant, among others. 18 U.S.C. § 3553(a)(1)-(7). A detailed analysis of these factors is unnecessary. Suffice it to say, Mr. Curaba's intended offense was serious in nature. (Docket 161 ¶ 8). Mr. Curaba received the benefit of a substantial reduction from the government in the severity of the charge to which he pled guilty. The court sentenced him to the mandatory minimum sentence. That sentence was chosen with care to reflect the seriousness of his offense, provide appropriate punishment and protect the public from further offenses by the defendant. (See generally Docket 165 & 165-1). Early release is not warranted.

### ORDER

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 170) is denied.

Dated February 17, 2021.

                BY THE COURT:

                /s/ *Jeffrey L. Viken*
                JEFFREY L. VIKEN
                UNITED STATES DISTRICT JUDGE